J-S06001-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: A.D., III, A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: C.M., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1476 EDA 2016 |

Appeal from the Order Entered April 12, 2016
In the Court of Common Pleas of Monroe County
Orphans' Court at No(s):  8 OCA 2016

| | | |
|---|---|---|
| IN THE INTEREST OF: T.M., MINOR CHILD | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: C.M., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1479 EDA 2016 |

Appeal from the Order Entered April 12, 2016
In the Court of Common Pleas of Monroe County
Orphans' Court at No(s):  9 OCA 2016

BEFORE:   MOULTON, RANSOM, and FITZGERALD[*], JJ.

MEMORANDUM BY MOULTON, J.:               **FILED MARCH 02, 2017**

C.M. ("Mother") appeals from the orders entered April 12, 2016, in the Monroe County Court of Common Pleas by the Honorable Jonathan Mark, which involuntarily terminated her parental rights to her minor children,

---

[*] Former Justice specially assigned to the Superior Court.

A.D., III, born in February 2011, and T.M., born in January 2014, (collectively, "the Children") pursuant to the Adoption Act, 23 Pa.C.S. § 2511(a)(1), (2), (5), (8), and (b).[1]  We affirm.

The trial court set forth the following factual and procedural history:

> The Children first came to the attention of Monroe County Children and Youth Services ("CYS" or "the Agency") on July 8, 2014 when the Agency received a referral that A.D. III had been left alone in a cabin with his half-brother and cousin. It was also reported that A.D. III and his half-brother and cousin had not bathed in days and their only source of food was uncooked hotdogs provided by neighbors. Later that evening, Mother returned with T.M. and provided a urine screen that tested positive for heroin. As a result, the Children were taken into Emergency Protective Custody. They have been in care ever since.
>
> On July 21, 2014, the Children were adjudicated dependent. The Children's placements were reviewed and their dependency continued by orders of Court dated November 14, 2014, February 11, 2015, May 14, 2015, August 13, 2015, and November 2, 2015. At the November 2, 2015 review hearing, the permanency goal for both of the Children was changed to Adoption. Mother did not appeal the goal change.
>
> On February 29, 2016, CYS filed petitions seeking termination of both parents' parental rights to the Children. On March 18, 2016, the petition was served on Mother. A termination of parental rights hearing ("TPR hearing") on the petitions was held on April 11, 2016.[2] One CYS caseworker and [M.M.] ("Maternal Aunt") testified.

---

[1] The trial court terminated the parental rights of A.D. ("Father") on the same date.  Father has not filed an appeal from the orders terminating his parental rights, nor is he a party to the instant appeal.

CYS introduced twenty exhibits, and Mother introduced none.

The record in the dependency proceeding and the evidence at the TPR hearing demonstrated that, despite efforts by CYS, Mother did not satisfy any of her plan goals. Among other things, Mother was required to provide drug screens three times per week. However, she was not consistent. She provided screens only when she came to visit the Children, which visits were sporadic at first and then non-existent as the case moved forward. Mother tested positive for heroin on every drug screen. N.T. 04/1 1/2016, p. 43. In addition, Mother was supposed to attend parenting classes and undergo a drug and alcohol evaluation. She did neither. Further, Mother was to obtain suitable housing and employment or means of income. She never obtained stable housing or provided proof of employment. Finally, Mother's visitation with the Children was initially inconsistent. Sadly, it became non-existent. Mother has not visited, contacted or attempted to see the Children since her last visit on April 22, 2015.

> [2] The hearing was also convened as a permanency review hearing.

During the course of the dependency proceedings, Mother was arrested and incarcerated on several occasions. Specifically, Mother was charged with Endangering the Welfare of a Child from the event that initiated CYS's involvement with the Children. In September of 2014, Mother was arrested in New Jersey after she was found with drug paraphernalia in her shoe. In January 2015, Mother was arrested on prostitution charges in Monroe County. She was jailed at Monroe County Correctional Facility from March 16, 2015 to April 7, 2015 on several outstanding warrants. Mother was also incarcerated in Monroe County at the time of the goal change hearing in November 2015. Finally, on February 29, 2016, Mother was sentenced to the State Intermediate Punishment Program, a 24-month program run by the Department of Corrections, that includes 7 to 9 months of inpatient substance abuse treatment in a State Correctional Facility followed by various levels of additional supervised treatment outside prison walls.

In contrast to Mother, the Children are doing well. They have lived in their most recent foster home since September of 2015. At the TPR hearing, Kristine Weber, a caseworker for CYS, testified that the Children are doing well in their current placement and have services in place. The Children are happy and give hugs and kisses to their foster parents. In addition, the foster parents have the Children involved in karate and help them play educational games on the computer. Moreover, the foster parents are willing to provide a permanent home for the Children so they can grow up together as brothers.

During the TPR hearing, Mother's attorney focused on CYS's effort in making Maternal Aunt, who has five children of her own, or her mother, [D.M.] ("Maternal Grandmother"), a resource for the Children, and questioned Weber as to why New York denied the Interstate Compact on the Placement of Children ("ICPC") request submitted by the Agency for both family members. Mother called only one witness, Maternal Aunt, who testified to the events surrounding New York's denial of the ICPC and expressed a desire to adopt the Children. No evidence of a bond between Mother and the Children was presented. In fact, when discussing Mother, Maternal Aunt testified that she has had no recent contact with Mother and that she, not Mother, had always been the one primarily responsible for taking care of the Children. There was no testimony from Mother who was present by video conferencing.

At the end of the TPR hearing, Mother's attorney argued that Mother loves the Children and had not seen them in a long period of time because a non-monetary condition of her bail on the Endangering charges prevented her from having contact with them. However, the evidence demonstrated that, after bail was set in the Endangering case, Mother was permitted to see the Children despite the bail condition. In fact, she did visit with them, albeit sporadically, after bail was set.

Opinion Pursuant to Pa.R.A.P. 1925(a), filed 6/3/16, at 1-5 ("1925(a) Op.").

On April 12, 2016, the trial court entered orders terminating Mother's parental rights to the Children pursuant to Pa.C.S. § 2511(a)(1), (2), (5), (8), and (b).  On May 10, 2016, Mother timely filed notices of appeal.[2]

Mother raises two questions on appeal:

> 1. Did Children and Youth fail to present clear and convincing evidence that termination of mother's parental rights served the emotional needs and welfare of her sons, T.M. and A.D. where the boys had able capable and appropriate grandmother and aunt providing love care and support during mother's incarceration which incarceration was/is of brief duration?
>
> 2. Did trial court err in terminating her parental rights without clear and convincing evidence that termination best served T.M.'s and A.D.'s emotional needs and welfare?

Mother's Br. at 9.

Taken together, Mother's issues on appeal challenge the propriety of the termination. Mother maintains that she was due to complete the State

_____

[2] Mother initially failed to file concise statements of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).  In light of this defect in the notices of appeal, the trial court on May 12, 2016 ordered Mother to file a Pa.R.A.P. 1925(b) statement within ten days of the date of the order.  Mother timely complied with the order, filing the Pa.R.A.P. 1925(b) statement on May 19, 2016.  *See In re K.T.E.L.*, 983 A.2d 745, 747 (Pa.Super. 2009) (failure to file 1925(b) contemporaneously with children's fast track appeal is considered defective notice of appeal and will not be dismissed since failure to file statement is violation of procedural rule, not an order of court); *Cf. J.P. v. S.P.,* 991 A.2d 904, 908 (Pa.Super. 2010) (failure to file 1925(b) statement of errors complained of on appeal, when ordered by trial court, will result in waiver of all issues on appeal).

Intermediate Punishment Program in October 2017, and would be available to perform parental duties upon her release. Mother's Br. at 17-18. Mother argues that incarceration is not conclusive of abandonment, and that Mother's incarceration is only for a short and finite period of time. *Id.* at 13, 20. She further argues that CYS failed to establish that termination was proper because Children's aunt and grandmother were available to care for Children while Mother was incarcerated. *Id.* at 18. Mother continues that there was "simply no evidence" presented at trial that demonstrated whether the emotional needs and welfare of the Children would be negatively impacted by terminating Mother's rights. *Id.* at 13, 22. We disagree.

We consider Mother's issues mindful of our well-settled standard of review.

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. [A] decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted) (alteration in original).

The Pennsylvania Supreme Court has explained the reason for applying an abuse of discretion to termination decisions:

> [U]nlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion.

*In re Adoption of S.P.*, 47 A.3d 817, 826-27 (Pa. 2012) (internal citation omitted).

This Court need only agree with any one subsection of section 2511(a), along with section 2511(b), in order to affirm the termination of parental rights. *In re B.L.W.*, 843 A.2d 380, 384 (Pa.Super. 2004) (*en banc*). We conclude that the trial court in this case properly terminated Mother's parental rights pursuant to sections 2511(a)(2) and (b), which provide as follows:

> **(a) General rule.**--The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> . . .
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the

- 7 -

incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

. . .

**(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(2), (b).

To terminate parental rights pursuant to section 2511(a)(2), the moving party must produce clear and convincing evidence regarding the following elements: "(1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied." *See In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa.Super. 2003).

Our Supreme Court has instructed:

incarceration is a factor, and indeed can be a determinative factor, in a court's conclusion that grounds for termination exist under § 2511(a)(2) where the repeated and continued incapacity of a parent due to incarceration has caused the child to be without essential parental care, control or subsistence and . . . the causes of the incapacity cannot or will not be remedied.

*In re Adoption of S.P.*, 47 A.3d at 828. Further, the Supreme Court

stated:

> [T]he length of the remaining confinement can be considered as highly relevant to whether "the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent," sufficient to provide grounds for termination pursuant to 23 Pa.C.S. § 2511(a)(2). [**In re E.A.P.***,* 944 A.2d 79, 85 (Pa.Super. 2008)] (holding termination under § 2511(a)(2) supported by mother's repeated incarcerations and failure to be present for child, which caused child to be without essential care and subsistence for most of her life and which cannot be remedied despite mother's compliance with various prison programs).

*Id.* at 830 (some internal citations omitted).[3]

We find the following portion of the trial court's opinion relevant to our

inquiry concerning Section 2511(a)(2):

> [W]e found that the statutory grounds for termination of Mother's parental rights had been established by clear and convincing evidence, and further, that termination of her rights best served the needs and welfare of the Children. Prompted by Mother's appeal, we have again carefully

_____

[3] In addition,

> If a court finds grounds for termination under subsection (a)(2), a court must determine whether termination is in the best interests of the child, considering the developmental, physical, and emotional needs and welfare of the child pursuant to § 2511(b). In this regard, trial courts must carefully review the individual circumstances for every child to determine, *inter alia*, how a parent's incarceration will factor into an assessment of the child's best interest.

*In Re Adoption of S.P.*, 47 A.3d at 830-31.

reviewed the record and remain convinced that our decisions are supported by both the facts and the law, and, moreover, fulfilled and advanced the best interest of the Children.

As of the termination hearing, CYS had been involved with this family for more than seventeen months. Both before and after the Children were adjudicated dependent and placed in foster care, Mother consistently demonstrated a lack of capacity to perform parental duties for the Children. Maternal Aunt testified that she, not Mother, took care of the Children before the July 2014 incident. No evidence was presented to refute the Aunt's testimony. Moreover, despite the provision of services by CYS, Mother demonstrated an inability to remedy the conditions which caused the Children to be placed or to satisfy service plan goals. In this regard, Mother has consistently been unable to obtain and maintain either suitable housing or employment and is incarcerated. She continued to test positive for heroin. Further, since being placed in September 2015, the foster parents, rather than Mother, have provided nurturing and care for the Children and have insured that their physical, mental, emotional, medical, developmental, and daily needs have been met. Finally, Mother has not visited or contacted the Children since April 2015. Under these circumstances and the evidence presented at hearing, it was clear to us that CYS had established grounds for termination of Mother's parental rights to the Children under subsections 2511(a)(1), (2), (5), and (8).

1925(a) Op. at 22-23.

CYS caseworker Kristine Weber testified that the Children have been dependent for almost two years at the time of the hearing. N.T., 4/11/16, at 10. Ms. Weber further testified that Mother tested positive for heroin every time she came to visit the Children, *id.* at 43, and that Mother had not visited the Children since April 22, 2015, *id.* at 22. Ms. Weber avers that Mother has not made any attempt to stay in contact with the Children while

- 10 -

she has been in prison except a letter addressed to the trial court judge, which was received on March 21, 2016. *Id.* at 36, 46.

Mother argues she was unable to perform her parental duties due to her incarceration, and that Maternal Grandmother and Maternal Aunt were able to provide nurturing care for the Children during Mother's temporary incarceration. This Court has held that incarceration can be a determinative factor where the incarcerated parent's repeated and continued incapacity leaves a child without essential care. *In re Adoption of S.P.*, 47 A.3d at 830. Mother's incarceration, when taken together with Mother's continued positive urine screens for heroin and her failure to maintain contact with the Children while the Children were in foster care, demonstrates a repeated and continued incapacity, abuse, neglect or refusal on Mother's part which has caused the Children to be without essential parental care pursuant to section 2511(a)(2).[4]

We conclude that the record supports the trial court's credibility and weight determinations, and it did not abuse its discretion when it terminated Mother's parental rights pursuant to section 2511(a)(2). *See In re M.G.*, 855 A.2d 68, 73-74 (Pa.Super. 2004).

_____

[4] Further, CYS explored the possibility of kinship care with both maternal Grandmother and maternal aunt through requests pursuant to the Interstate Compact on the Placement of Children ("ICPC"). N.T., 4/11/16, 11-12, 20-29. The ICPC requests were denied due to concerns with the placements. *Id.* at 18, 29.

The trial court must also consider how terminating Mother's parental rights would affect the needs and welfare of the Children pursuant to 23 Pa.C.S. § 2511(b). The focus in terminating parental rights under section 2511(b) is not on the parent, but on the child. *In re Adoption of C.L.G.*, 956 A.2d 999, 1008 (Pa.Super. 2008) (*en banc*). Pursuant to section 2511(b), the trial court must determine "whether termination of parental rights would best serve the developmental, physical and emotional needs and welfare of the child." *See In re C.M.S.*, 884 A.2d 1284, 1286 (Pa.Super. 2005). "When conducting a bonding analysis, the court is not required to use expert testimony." *In re Z.P.*, 994 A.2d 1108, 1121 (Pa.Super. 2010). Further, "[a] parent's own feelings of love and affection for a child, alone," will not preclude termination of parental rights. *Id.* As this Court stated, "a child's life 'simply cannot be put on hold in the hope that [a parent] will summon the ability to handle the responsibilities of parenting.'" *In re Z.S.W.*, 946 A.2d 726, 732 (Pa.Super. 2008) (quoting *In re Adoption of M.E.P.,* 825 A.2d 1266, 1276 (Pa.Super.2003)). Rather, "a parent's basic constitutional right to the custody and rearing of his child is converted, upon the failure to fulfill his or her parental duties, to the child's right to have proper parenting and fulfillment of his or her potential in a permanent, healthy, safe environment." *In re B., N.M.*, 856 A.2d 847, 856 (Pa.Super. 2004).

This Court has explained that, "[i]ntangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." *In re C.M.S.*, 884 A.2d 1284, 1287 (Pa.Super. 2005). Further, the trial court "must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond." *Id*. (citation omitted). However, "[i]n cases where there is no evidence of any bond between the parent and child, it is reasonable to infer that no bond exists. The extent of any bond analysis, therefore, necessarily depends on the circumstances of the particular case." *In re K.Z.S.*, 946 A.2d 753, 762-763 (Pa.Super. 2008) (citation omitted).

Ms. Weber testified that she observed the Children in the foster placement, and described the Children as "very bubbly" and that they are "always happy." N.T., 4/11/16, at 37. Ms. Weber continued that the Children go to their foster mother with any issues or concerns. *Id.* at 38. Ms. Weber stated that, while the Children do still talk about their biological family, the Children are connected to their foster parents. *Id.* Ms. Weber further testified that the Children appear bonded to their foster parents, and display affection for their foster parents by hugging and kissing their foster parents. *Id*. at 48.

With regard to the Children's bond with Mother, the trial court stated that it "was just as clear to us that the best interests and welfare of the

- 13 -

Children required that Mother's parental rights be terminated." 1925(a) Op. at 23. The trial court continued, "[a]t the hearing, Mother's attorney expressed that Mother loved the Children and did not want to give up parental rights." *Id.* The trial court concluded:

> Under these facts, we found that whatever bond exists between Mother and the Children is neither as strong nor as enduring and nurturing as the bond that exists between the Children and foster parents. Consistently, we found that severing parental ties with Mother would not harm the Children mentally, emotionally, or spiritually, while breaking the bond with the foster parents, who have been their parents, would do them significant harm.
>
> Simply, under the facts and circumstances of this case, we found that termination of Mother's parental rights would best serve the developmental, physical, and emotional needs and welfare of the Children and promote their best interests.

*Id.* at 25.

The record supports the trial court's conclusion. The Children have a strong, enduring bond with foster parents, which would cause the Children significant harm if the bond were broken. Mother has made no attempt to contact the Children since April of 2015. We find that the competent evidence in the record supports the trial court's determination that there was no bond between Mother and the Children which, if severed, would be detrimental to the Children, and that the termination of Mother's parental rights would best serve the needs and welfare of the Children. Thus, we will not disturb the trial court's determinations. *See In re M.G.*, 855 A.2d at 73-74.

- 14 -

We affirm the orders terminating Mother's parental rights on the basis of sections 2511(a)(2) and (b).

Orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/2/2017